UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CONSALO & SONS FARMS, INC., <br><br>        Plaintiff, <br><br>    v. <br><br> MARKET 52, et al, <br><br>        Defendants. | CASE NO. 1:11-CV-1660 AWI DLB <br><br> ORDER GRANTING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER |

Plaintiff William Consalo & Sons Farms, Inc. of New Jersey ("Consalo") has made an ex parte motion for temporary restraining order and motion for preliminary injunction against Defendant Market 52 of Kingsburg, CA ("Market") based on the Perishable Agricultural Commodities Act ("PACA").  Between June 21 and June 28, 2011, Consalo sold and delivered to Market five loads of fresh blueberries with a total invoiced value of $192,183.90.  A party seeking a preliminary injunction must demonstrate that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S.Ct. 365, 374 (2008), citations omitted.  Following the U.S. Supreme Court's holding in Winter, the Ninth Circuit has held that, "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

"Perishable agricultural commodities received by a commission merchant, dealer, or

broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. §499e(c)(2).  Under PACA, the term 'perishable agricultural commodity' includes "Fresh fruits and fresh vegetables of every kind and character." 7 U.S.C. §499a(4)(A).  Fresh blueberries qualify.  Robert Consalo, treasurer of Consalo, states "Market 52 is a corporation and produce dealer as defined by 7 U.S.C. §499a and operates subject to and is licensed under PACA."  Doc. 4, Robert Consalo Declaration, at 2:4-5.  The appended documentation shows that Market was issued a license July 29, 2011.

> The term 'dealer' means any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a 'dealer' in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a 'dealer' whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person not considered as a 'dealer' under clauses (A), (B), and (C) may elect to secure a license under the provisions of[7 U.S.C. §499c], and in such case and while the license is in effect such person shall be considered as a 'dealer.'

7 U.S.C. §499a(6).  The structure of this definition is complex; a person is a dealer if he/she/it trades in perishable agricultural commodities unless the person falls under any of three exceptions with a further notwithstanding clause in case of licensure.

Market appears to be engaged in buying and selling wholesale quantities of blueberries. "Wholesale or jobbing quantities, as used in paragraph (6) of the first section of the Act, means aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. §46.2(x).  However, Consalo can not rely on Market's license to establish its status as a "dealer."  The license was issued on July 29, 2011. Doc. 4, Ex. 2.  The relevant sales took place in late June.  The

notwithstanding clause states that a person is only a dealer "while the license is in effect." 7 U.S.C. §499a(6). The fact Market sought a PACA license implies that Market has transacted more than 2,000 pounds of produce in a day. Given the totality of the evidence at hand, the court finds that Market does not seem to fall under any of the three exceptions. The blueberries at issue were not grown by Market itself. The fact that the invoice cost of one week's worth of blueberries was over $190,000 strongly suggests that Market's purchase of produce easily exceeds $230,000 for the calendar year. The invoices show that the blueberries were shipped to Arizona, suggesting that the blueberries were not grown and sold within one state. Doc. 4, Ex. 3. While the evidence is not altogether clear cut, it is sufficient at the ex parte motion for temporary restraining order stage to show that Market is a "dealer" within the meaning of PACA. Those invoices also show that Consalo included language preserving its rights under 7 U.S.C. §499e(c)(4). The proceeds of Consalo's blueberry sold by Market are subject to a PACA trust.

Robert Consalo states that "Jerald Daniel Downs, the president of Market 52, has repeatedly promised to make payment. On September 22, 2011, he finally told me that Market 52 had severe cash flow problems due to expansion and that Market 52 was trying to obtain additional funding to pay its creditors. On September 23, 2011, Mr. Downs told me that he would make a wire transfer to Consalo on Monday, September 26, 2011. On Monday, September 26, 2011, Mr. Downs wired only $4,000.00 in partial payment of the debt owed to Consalo. Mr. Downs told me that he did not have any further funds available to pay Consalo. He also said that the was not sure if or when he would be able to pay Consalo." Doc.4, Robert Consalo Declaration, at 3:4-11. At this point, Consalo is owed the balance of the invoices, $188,183.90. Consalo's counsel has provided a statement arguing that providing notice to Market would allow Market to continue the dissipation of trust funds in paying other bills. Doc. 7, Louis Diess Declaration. Consalo is threatened with irreparable harm in that PACA trust monies are in danger of further dissipation. See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 140-41 (3rd Cir. 2000).

Based on the evidence presented, the court finds that Consalo will likely suffer immediate irreparable injury unless a temporary restraining order is granted.

Therefore, it is ORDERED:

1. This temporary restraining order is entered on October 4, 2011, at 3:00 PM.

2. Consalo shall serve a copy of the Complaint, Motion for Temporary Restraining Order, Motion for Preliminary Injunction, this Order, and all associated filings by personal service, including by facsimile transmission or federal express, on or before October 6, 2011, at 5:00 PM. Such service shall be deemed good and sufficient.

3. Market shall file any and all responsive papers on or before October 13, 2011 at 10:00 AM.

4. A hearing on Consalo's motion for preliminary injunction is scheduled for October 17, 2011 at 1:30 PM in Courtroom Two.

5. Tulare may apply to the court for modification or dissolution of the instant Order upon two (2) days' notice to Consalo, or upon such shorter notice as the court may allow.

6. The $188,183.90 in PACA trust assets belonging to Consalo and in the possession of the Market will serve as Consalo's security for this temporary restraining order as required by Fed. Rule Civ. Proc. 65(c).

7. Market, its officers, agents, factors, subsidiaries, assigns, and banking institutions (specifically including Defendants Jerald Daniel Downs and Lyndsey C. Downs) who receive actual notice of this Order are temporarily restrained and enjoined from dissipating, paying, transferring, assigning, or selling PACA trust assets up to a total of $188,183.90 whether held as receivables, cash on hand, hard assets, within bank accounts, or held in any other tangible or intangible form until further order of this court.

8. If the Market pays Consalo the sum of $188,183.90, Consalo is required to immediately make a filing informing the court of this fact so the temporary restraining order can be dissolved and the hearing vacated.

IT IS SO ORDERED.

Dated:   October 4, 2011

CHIEF UNITED STATES DISTRICT JUDGE